[Civ. No. 15189. First Dist., Div. One. Jan. 12, 1953.]

THEODORE M. MONELL, Plaintiff and Respondent, v. ANGELINA M. SABELLA et al., Defendants and Respondents; J. W. EHRLICH, Appellant.

Roy A. Sharff for Appellant.

Theodore M. Monell, in pro. per., for Plaintiff and Respondent.

Walter E. Hettman, John R. Bauer, John F. O'Sullivan and Harry M. Grover for Defendants and Respondents.

BRAY, J.—Defendant Ehrlich appeals from the portion of a declaratory judgment determining that his claim to $7,500, evidenced by his check, is unfounded.

### QUESTION PRESENTED

Was a certain $7,500 check deposited under the terms of the lease?

## Evidence

Plaintiff Monell, an attorney, brought this action to determine who is entitled to a $7,500 check drawn by Ehrlich, also an attorney. The facts most strongly in favor of the court's finding that it was so deposited, follow. Monell, together with Meyer, a realtor, represented Antone and Angelina Sabella* in negotiations for the leasing of certain property to Nate Stein. The latter was represented in the negotiations by Attorneys Sharff and Ehrlich, who are office associates. Except for the letter written by Ehrlich hereafter mentioned Sharff solely handled the transaction. After preliminary negotiations Monell drew a draft of lease and sent a copy to Sharff. There were then numerous conferences, mostly over the phone. On September 29, 1947, Meyer, Monell, Sabella, Sharff and Stein met in Monell's office. The terms of the lease were gone over and certain modifications made. Paragraph 28 of the lease provided that the lessee, Stein, deposit with the Sabellas, the lessors, a $7,500 United States Treasury Bond as security for performance. The lease was not then signed. Further telephone conversations occurred between Monell and Sharff concerning Stein's desire to have inserted a clause releasing him from liability if he assigned the lease to a corporation. Sharff testified that in the last talk prior to Ehrlich's letter Monell said that the lease should be signed and for Sharff to "get that receipt and money over here and we can iron out all the loose ends afterwards"; that Monell would hold both until Sabella agreed to the clause. Monell denied such a conversaiton. His version was that he told Sharff Sabella wanted the deal closed, and he, Monell, wanted the deposit, otherwise they would call the deal off. Sharff objected to making the deposit but was willing to make it "so long as I promised to hold it and not deliver it until the lease was executed and signed by all parties . . ." Monell claimed that a *receipt* was not to be part of the delivery. Shortly thereafter Ehrlich sent the letter, the $7,500 check and form of receipt upon which the controversy is based. Ehrlich testified that he had no interest in the transaction; that the money was his own and he put it up as an accommodation to a New York friend who asked him to do so. On receipt of this letter, Monell phoned Sharff,

---

*During the litigation the estate of Antone Sabella, of which the Bank of America was the executor, has been closed, and Antone's interest in the $7,500 distributed to Angelina Sabella as trustee.

told him that he was making additional changes in the lease, and was having it retyped. Sharff said that would be all right. Monell sent him the new lease. In this lease paragraph 28, which required the United States Treasury Bond as security, was divided into two paragraphs numbered 28 and 29. Important here in view of the fact that Monell then had Ehrlich's letter and check is the latter paragraph which in place of the treasury bond requirement, provided, "Lessee *deposits* with Lessor the sum of $7500 . . . as security for .the due, proper and faithful performance"* of the lease. Lessor shall pay Lessee 2½ per cent per annum interest on that sum "Upon the expiration or cancellation of this lease" and the surrender of possession. "Lessor shall refund to Lessee said sum of $7500 so deposited as security."

November 5, Sharff, "As attorney for Nate Stein" wrote Monell enclosing two copies of the lease as changed by Monell, dated October 30, and executed by Stein. Sharff's letter stated "Heretofore we have delivered to you a trustee account check in the amount of $7,500, payable to your order as the deposit under this lease . . . This amount of money and the lease herewith delivered to you are upon the condition . . ." This condition was that the landlord perform certain acts, in putting the property into proper condition to meet governmental regulations. This same condition was in the Ehrlich letter. Then followed: "The $7,500 check is a cash deposit under paragraph 29th of the enclosed lease and said deposit is to be in the name of J. W. Ehrlich. There has heretofore been delivered to you a form of receipt, which we wish signed and returned to this office. Said receipt, however, is to be altered in the respect that the rate of interest is to be two and one-half per cent." The letter finally stated that the lease was delivered on the condition that if the landlord did not place the premises in proper condition by November 30 Stein would have the right to cancel the lease or postpone commencement of rent payment until this was done. This condition was met and on January 29, 1948, Monell wrote Sharff stating that under the lease rent was to commence December 1, 1947; however, rent for December would be waived but the January rent must be paid within five days. He also asked that Stein come in and sign an inventory "so that this matter can be completed at an early date." Sometime in March Stein assigned his interest in the lease to

---

*All italics added.

The Terrley Corporation. On March 11, Sharff wrote Monell sending check for $1,000 paying rent to February 29 and calling attention to the fact that the lease which he enclosed in his November 25 letter had not been returned nor had the receipt for $7,500. He stated that he would appreciate these being taken care of at this time. Replying on March 16 Monell wrote that the lessors had executed the lease but he was holding the executed copies until the preparation of the inventory was completed when he would affix it to the lease and deliver it. "The lease may be considered effective at the present time and I am merely holding the same until we can clear up the loose ends as to the personalty covered. I also am holding as trustee the sum of $7500 paid by Mr. Ehrlich and will obtain proper receipt for this amount upon delivery of the lease to Mr. Sabella."

July 23 Sharff sent Monell an assignment of the lease to The Terrley Corporation signed by Stein, stating that if the form were satisfactory to Monell, Sharff would have it signed by the corporation. July 29 Monell answered stating that a paragraph should be added to the effect that the corporation disclaimed any interest in the $7,500 deposited as security and "agrees that lessor may refund said sum or any balance thereof upon any termination of said lease to J. W. Ehrlich, who deposited said sum for the protection of lessor under the terms of said lease." He also asked that Ehrlich execute a deposit agreement which he enclosed. This was an elaborate instrument referring to Ehrlich as "surety," adding certain provisions, broadening the matters which the deposit was to cover but omitting the provision as to attorney's fees which was in the Ehrlich receipt. He also enclosed the original executed lease with inventory attached. In September The Terrley Corporation, then in possession, abandoned the premises. Rent was paid only up to April 30.

Shortly after July 29 Sharff asked Monell if he had paid over the deposit to the lessor, stating there might be some question whether it belonged to Ehrlich, Stein or the lessor. Monell said he had not and would not until the matter was settled. Sharff and Monell and Ehrlich were very friendly and handled the matter very loosely, relying on each other. Subsequent to July 29 many conversations were had between Sharff and Monell in which Sharff asked for the money's return. October 11 Ehrlich wrote asking its return since "The arrangements under which this money was to be held by you were never completed . . ."

The court found that Stein delivered the $7,500 transmitted by his attorney, that it was deposited with plaintiff under the provisions of section 29 of the lease "for and on account of NATE STEIN and was subject to the provisions of said section 29" and that Ehrlich was not entitled to its return.

## EHRLICH'S LETTER AND RECEIPT

It is dated October 30, 1947. "As attorney for Nate Stein I enclose herewith two copies of lease . . . and my trustee account check in the amount of $7500 payable to your order. . . . This money and the signing of the lease is on condition . . ." Here follows the same condition concerning putting the premises in order that appears in Sharff's later letter. "The $7500 check is a cash deposit in substitution for the U.S. Treasury Bond mentioned in paragraph 28 of the lease and said deposit is to be in the name of the undersigned. It is our understanding that Mr. Sabella will pay, semiannually, interest at one and one-half per cent to the undersigned upon said sum of $7,500. The undersigned shall have the right to substitute a U.S. Treasury Bearer Bond in place of said amount of $7500 at any time. . . . There is enclosed receipt for said $7500, which please sign and return." A P.S. states that the lease and deposit are delivered upon condition that unless lessor complies with the condition concerning the premises by November 30, Stein may cancel or postpone payment of rent.

The form of receipt enclosed states: "Received from J. W. Ehrlich the sum of $7500.00 as a deposit in accordance with the provisions of the 28th paragraph . . ." It is understood that lessor will "hold said money in accordance with the provisions of said lease" and will pay Ehrlich 1½ per cent per annum interest upon said sum. Upon termination of the lease the money shall be repaid forthwith to Ehrlich and if it is necessary for Ehrlich to institute legal proceedings against the lessors to recover the money then they will pay him an attorney's fee to be fixed by the court.

## CONTENTION OF APPELLANT

Appellant contends that there is no substantial conflict in the evidence and that the documents when considered together conclusively establish that in sending the deposit, he was merely offering to deposit the money on the conditions expressed in the form of receipt forwarded with his check and on the further condition that the receipt be

signed and returned; that such offer was never accepted and was withdrawn by him.

Whether the question is one of law to be taken from the writings alone or is one of mixed fact and law is not too material. If one of law, the most reasonable interpretation of the writings is that found, in effect, by the trial court, namely, that appellant as attorney for Stein sent the money as a deposit pursuant to paragraph 29; that the return of a signed receipt was not a condition of the deposit. If there is a conflict in the evidence, then, of course, the trial court's determination of the facts is binding on us. But even here the facts amply show that at no time was the return of the receipt a condition precedent to the acceptance of the deposit. Appellant's own actions as well as those of his associate Sharff demonstrate that neither considered the return of the receipt as a prerequisite to the deposit of the money. Both appellant and Sharff are lawyers and in their respective letters they definitely set forth what were conditions, which did not include the return of the receipt. Sharff had his client execute the last draft of the lease which stated "Lessee *deposits* with Lessor the sum of $7500" and "said sum of $7500 *so deposited* . . ." Monell agreed to and did hold the $7,500 until the inventory was signed and the executed lease with inventory attached delivered to the parties. It must be remembered that the lessor under the terms of the lease was entitled to a deposit, not a suretyship. The tenant went into possession under that lease. In his letter of March 16 Monell stated the lease was then effective, that he was merely holding the same until the loose ends *as to the personalty* could be cleared up. He did say that he was holding the money as trustee and would obtain "proper receipt" upon delivery of the lease to the lessor. This, however, did not mean that until such receipt was obtained the money was not a deposit under the lease. The situation was really a very simple one. Appellant sent the money as a deposit under paragraph 29. He attached certain conditions. He also enclosed a receipt which he asked to be returned to him (not as a condition, however, to the deposit of the money). In that receipt he added two conditions which do not appear in the lease: (1) that the interest was to be paid to him, and if and when returnable the money was to go to him; (2) a provision for attorney's fees. The acceptance of the money by the lessors, of course, constituted an acceptance of these conditions. The return of the receipt, however, was not

a condition. That it was not is evidenced not only by the delivery of the lease itself but by the fact that in all of the conversations between Monell and Sharff no such suggestion was ever made. As late as July 23, when Sharff sent Monell the form of assignment of the lease from Stein to the corporation, he made no mention of the failure to return the receipt. It was not until after this that appellant first asked for a return of the money. On one occasion Sharff asked Monell to return the Ehrlich receipt, first changing the interest therein to 2½ per cent. Thereafter Monell sent the modified lease stating that the $7,500 was deposited. That certainly was notice to Stein and to his attorneys, Sharff and Ehrlich, that lessor and plaintiff were treating the check as a deposit under the terms of the lease. Neither Stein, Sharff nor Ehrlich complained of this action until the lessee had defaulted. Assuming that the return of the receipt was a condition, the acceptance of the executed lease by Sharff as one of the attorneys for Stein, without having received the receipt, coupled with the occupancy by Stein of the premises under the lease, constituted a waiver of such condition. The fact that after the money had been accepted as a deposit, Monell asked appellant to sign a deposit agreement, does not alter the situation. Monell sent this proposed agreement to Sharff together with an executed duplicate lease which, in effect, acknowledged receipt of the $7,500. Whether appellant signed this agreement or not was unimportant as the lessors in accepting the money were bound by the conditions which appellant had attached to its delivery. The lessors under the lease were entitled to a deposit as security for its performance. The moment Monell delivered the executed lease to Sharff for Stein the deposit was complete. The whole proceeding was loosely handled by the attorneys representing both lessor and lessee. However, there is nothing in the letters of Sharff or Ehrlich to indicate that the latter was merely offering to act as a surety. On the contrary, they stated that as attorneys for Stein they were enclosing the check as "the deposit" under the lease. Again they referred to it as "a cash deposit under paragraph 29th" and as "a cash deposit in substitution for the U. S. Treasury Bond mentioned in paragraph 28. . . ." The facts that the deposit was to be returned to Ehrlich on fulfillment of the terms of the lease, that he was to receive interest on it, and even that he was to receive attorney's fees if he had to sue, do not change this situation.

This is not a case of a third party acting as a surety or guarantor. It is simply a case where the lessee was required to deposit money to secure the performance of a lease. Appellant as attorney for the lessee deposited his own money for the latter. Had the lease been performed he would have been entitled to its return to him rather than to the lessee and he could have recovered attorney's fees if he had been forced to sue for that return. The terms of the lease were not performed. Therefore, the lessor was entitled to keep the deposit as provided in the lease. Appellant requested the court to find that the $7,500 is the property of appellant. The court properly refused to do so. It did find that the money was transmitted by appellant as a deposit under paragraph 29. Its ownership at time of deposit became unimportant when by reason of the breach of the lease, the lessor became entitled to keep it.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied February 11, 1953, and appellant's petition for a hearing by the Supreme Court was denied March 12, 1953. Schauer, J., was of the opinion that the petition should be granted.